IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GREGORY D. WILLIAMS,       §
      §
         Plaintiff,       §
      §
v.       §       Civil Action No. 3:04-CV-1386-L
      §
DALLAS INDEPENDENT SCHOOL       §
DISTRICT,       §
      §
         Defendant.       §

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion for Summary Judgment, filed July 19, 2005; and Defendant's Motion to Dismiss with Prejudice All Claims Asserted Against Defendant Under 42 U.S.C. §1983 and First Amendment Except Claim Based Upon Plaintiff's Removal as Athletic Director, and Motion to Sever; Alternative Motion for Ruling on the Merits of Defendant's Summary Judgment Motion as to First Amendment Retaliation Claims Based on All Employment Decisions Mentioned in Plaintiff's Original Complaint, filed September 6, 2005.  Upon careful consideration of the motions, response, reply, appendices, and applicable law, the court **grants** Defendant's Motion for Summary Judgment; **grants** Defendant's Motion to Dismiss with Prejudice All Claims Asserted Against Defendant Under 42 U.S.C. § 1983 and First Amendment Except Claim Based Upon Plaintiff's Removal as Athletic Director; **denies as moot** Defendant's Motion to Sever; and **denies as moot** Defendant's Alternative Motion for Ruling on the Merits of Defendant's Summary Judgment Motion as to First Amendment Retaliation Claims Based on All Employment Decisions Mentioned in Plaintiff's Original Complaint.

## I.    Procedural and Factual Background

Plaintiff Gregory Williams ("Plaintiff" or "Williams") brought this action on June 25, 2004 against Defendant Dallas Independent School District ("Defendant" or "DISD") pursuant to 42 U.S.C. § 1983.  He alleges that DISD retaliated against him for the exercise of his free speech rights under the First Amendment to the United States Constitution.  Williams premises his claim on a single instance of speech and a single employment action.  He contends that written and oral communications he made to J.L. Wright ("Wright"), the Principal at L.G. Pinkston High School ("Pinkston"), on November 20, 2003, regarding the handling of Pinkston athletic funds qualify as speech protected by the First Amendment.  Likewise, he contends that his removal as Pinkston Athletic Director on November 24, 2004, four days after he made such communications, was an adverse employment action.  He also contends that the employment action, to which the DISD consented and/or later ratified, was taken as retaliation against him for having exercised his First Amendment rights.  Finally, Williams asserts that the written and oral communications, particularly the speech he wrote in a memorandum, were a substantial motivating factor in his removal as Athletic Director.

DISD filed its motion for summary judgment on July 19, 2005, contending that no genuine issue of material fact exists with respect to any of Plaintiff's asserted claims, and that it is therefore entitled to entry of judgment as a matter of law.  DISD claims that it took no "adverse employment action" against Williams; that Williams failed to engage in protected speech because his written and oral communications did not involve a matter of public concern; and that it had a legitimate, nonretaliatory basis for its actions.  It asserts that Williams cannot produce sufficient summary judgment evidence to demonstrate the existence of any genuine issue of material fact as to DISD's alleged retaliatory motives for the removal of Williams as Athletic Director.

**Memorandum Opinion and Order  - Page 2**

The court now sets forth the facts upon which it relies to resolve the motions.  In setting forth the facts, the court applies the summary judgment standard as set forth in the following section.

On April 10, 2003, DISD hired Williams to be the head football coach and Athletic Director at Pinkston, a DISD school.  Pl.'s Original Compl. at 2.  On November 20, 2003, Williams wrote a memorandum ("memorandum") to Wright, in which he expressed his concerns regarding the handling of athletic funds.  *Id.*  From April 10, 2003 through November 20, 2003,Williams did not receive any disciplinary action regarding his job performance.  *Id.*  Four days after writing the memorandum, on November 24, 2004, Williams was removed as Athletic Director.  *Id.*  On March 5, 2004, DISD placed Wright on administrative leave pending an investigation of matters which included "financial accountability."  *Id.* at 3.

Williams, in his Original Complaint, pleaded at least three instances of alleged constitutionally protected speech, namely: (1) the memorandum; (2) a letter Williams wrote to the University Interscholastic League alleging rules violations and "Booster Club" fund irregularities; and (3) his efforts to investigate Wright's apparent misuse of funds at Pinkston.  *Id.* at 4.  Williams also pleaded that Wright took several actions qualifying as adverse employment actions, including (1) removing him as Athletic Director; (2) changing the locks on his office door on December 19, 2003; (3) placing him on "emergency removal" from the Pinkston Campus on January 8, 2004; and (4) placing him on administrative leave as a DISD employee on that same day.  *Id.* at 2-3.

In its motion, DISD identified four disparate First Amendment retaliation claims it believes Williams alleged in his complaint; claims for (1) removal as Athletic Director; (2) being placed on administrative leave; (3) the proposed termination of Williams's employment contract prior to the end of its term; and (4) the non-renewal of Williams's contract.  Def.'s Mot. for Summ. J. at 1.

Williams responded in Plaintiff's Response to Defendant's Motion For Summary Judgment on August 16, 2005, stating that he has alleged only one instance of protected speech, "his complaint about the use of public funds," and one instance of harm, "his being removed as the [Athletic Director] at Pinkston." Pl.'s Resp. to Def.'s Mot. for Summ. J. at 2. DISD filed its reply on August 31, 2005, requesting that the court grant summary judgment on Plaintiff's First Amendment retaliation claim based on his oral and written communications and subsequent removal as Athletic Director. Def. DISD's Reply Br. to Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 2. Williams has not amended his complaint, nor has he filed a formal motion for voluntary dismissal of any of his claims. The applicable two-year statute of limitations has not run as to any First Amendment retaliation claim Williams asserted against DISD pursuant to 42 U.S.C. § 1983.

On September 6, 2005, DISD filed a motion to dismiss. DISD moves that the court dismiss with prejudice each and every First Amendment claim brought pursuant to 42 U.S.C. § 1983 arising from Williams's employment with DISD during the time period from December 1, 2003 through May 25, 2004, other than Williams's claim based on his oral and written communications and subsequent removal as Athletic Director, and to sever these claims from the single viable claim. Alternatively, DISD moves the court to rule on the merits of its summary judgment motion as to each and every First Amendment retaliation claim Williams asserted against DISD in his Original Complaint.

In his brief, Williams stated that "Plaintiff's cause of action is based solely on the Defendant's 'removal of the Plaintiff as Athletic Director' four days after the Plaintiff communicated his concerns, both orally and written, regarding the expenditure of public school funds." Pl.'s Brief in Supp. of Pl.'s Resp. to Def.'s Mot. for Summ. J. at 3. The court considers

Williams's statement, coupled with the statement in his response discussed above, as an abandonment of all claims asserted in his Original Complaint, except the claim based upon his oral and written communications and his subsequent removal as Athletic Director.  The abandoned claims are no longer before the court.  Although Williams filed no formal motion to dismiss these claims, the court treats the statements made by Williams as if he voluntarily and formally filed a motion to dismiss pursuant to Fed. R. Civ. P. 41(a)(2).

As the court may "set the terms and conditions" of a dismissal as it deems proper with respect to a Rule 41(a)(2) motion, the court determines that the dismissal should be with prejudice. Given that this case is at the dispositive stage, that all discovery has been completed, and that all issues have been joined, the court determines that at this late stage of the game, no party should be allowed at some later date to reassert a claim, counterclaim, or defense that it has voluntarily abandoned, released, or withdrawn.  Accordingly, under these circumstances, dismissal of all of Plaintiff's claims with prejudice is appropriate, except that concerning Williams's oral and written communications in November 2003 and his subsequent removal as Athletic Director.  Accordingly, the only claim the court will consider in this order is Williams's First Amendment claim brought pursuant to 42 U.S.C. § 1983 based on his oral and written communications and his subsequent removal as Athletic Director.

## II.    <u>Summary Judgment Standard</u>

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v.*

*Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986); *Ragas,* 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Anderson,* 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992), *cert. denied,* 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the

governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

**III.   Defendant's Motion for Summary Judgment**

### A.  Standard for Public Employee First Amendment Claim

Williams contends that his removal as Athletic Director four days after he made oral and written communications to Wright, including submitting the memorandum, was a retaliatory action violating his First Amendment rights. For the reasons that follow, the court disagrees that Williams has suffered a First Amendment violation.

In order to prevail on a First Amendment retaliation claim, a plaintiff must show: (1) he suffered an adverse employment action; (2) the speech at issue involved a matter of public concern; (3) his interest in commenting on matters of public concern outweighed the government's interest in promoting efficiency; and (4) the speech motivated the adverse employment action. *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 184 (5th Cir. 2005). If the plaintiff satisfies this test, the burden shifts to the defendant to show that it "would have come to the same conclusion in the absence of the protected conduct." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001).

## B. Public Concern Analysis

### 1. Contentions of the Parties

Assuming, without deciding, that the removal of Williams from the position of Athletic Director was an adverse employment action, the court examines the public concern element. Williams contends that he was removed as Athletic Director because he addressed a matter of public concern through communications, both written and oral, that comprised a "complaint about the use of public funds." Pl.'s Resp. to Def.'s Mot. for Summ. J. at 2. According to Williams, the memorandum "expressed concerns regarding Wright's handling of athletic funds at the high school." Pl.'s Original Compl. at 2 ¶ 5. The memorandum in question provides as follows:

> This memorandum is with reference to gate receipts generated through athletic events held here at L.G. Pinkston High School.
> As an experienced coach with Dallas Independent School District, I am very familiar with the standard operating procedures utilized at the majority of the high [s]chool campuses in this district. I have also gone a step f[a]rther by communicating with Coach Goree Johnson, Assistant AD DISD, Coach Elsie Moreno, Assistant AD DISD and Coach Calvin Portly, Assistant AD DISD on yesterday, November 19, 2003. These individuals confirmed my original understanding of what standard operating procedure is at the majority of the high school campuses.
> Typically, all gate receipts generated for non-district events held on campus or at one of the field houses are deposited into the "General Athletic Account." In this instance that would be Account #101. This general athletic account is then utilized to provide supplemental funding for **all** sports. Which means that these gate revenues should be used to help fund **all** of our basketball teams, girls and boys.
> At the present time, our varsity boys have 2 (two) upcoming tournaments, which require entry fees. Our freshmen boys' basketball team is scheduled to participate in a tournament this weekend, which requires an entry fee be paid immediately. The varsity girl[s'] basketball team received the total gate revenues from their scrimmage game held here last week. This was considered a "fund raiser" for the basketball program. The scrimmage generated

> over $200.00.  The gate revenues from this weeks games were earmarked for tournament entry fees for our boys teams.
>
>  I am attempting to operate an athletic department based on standard operating procedures and norms throughout the State of Texas.  However, I have found that there is a network of friends and house rules, which govern practices here at L.G. Pinkston High School.  As a result, Coach Calahan was permitted to deposit an additional $200.00 into the girl[s'] account.  Therefore, I will advise the other basketball coaches that the athletic account #101 will not be able to support their entry fees as originally plan[n]ed.

App. in Supp. of Pl.'s Resp. to the Def.'s Mot. for Summ. J., Ex. A-2 (emphasis in original).

Williams argues that the action taken against him in retaliation for his speech, if unchecked, would serve to "prevent and preclude others from questioning finances at public schools throughout the area and, indeed, the State of Texas."  Pl.'s Original Compl. at 4.

DISD contends that Williams "cannot produce evidence to show that any of his verbal or written complaints to his supervisor, Principal Wright . . . were protected by the First Amendment." Def.'s Mot. for Summ. J. at 8.  Specifically, it asserts that the memorandum contains no protected speech, and that Williams cannot show that the memorandum contains speech addressing a matter of public concern.  *Id*. at 4, 8.  According to DISD, the memorandum contains "allegations" made by Williams "while he was [Athletic Director]" and "speaking specifically" in that capacity and therefore solely as an employee.  Def.'s Brief in Supp. of Def.'s Mot. for Summ. J. at 25.   The court now addresses the public concern element.

### 2.  The Applicable Law Regarding The Public Concern Element

As stated previously, speech by a public employee must involve a matter of public concern in order to enjoy constitutional protection from retaliation by a public employer.  *Salge*, 411 F.3d at 184.  Matters of public concern are those which can be "fairly considered as relating to any matter of political, social, or other concern to the community."  *Connick v. Myers*, 461 U.S. 138, 146

(1983).  If speech is not a matter of public concern, an employee is not entitled to constitutional protection even if an adverse employment action was taken because of what the employee said.  *See Brawner v. City of Richardson*, 855 F.2d 187, 191 (5th Cir. 1988).  The court decides the public concern element as a matter of law.  *Rankin v. McPherson*, 483 U.S. 378, 386 n.9 (1987); *Terrell v. University of Tex. Sys. Police*, 792 F.2d 1360, 1362 n.2 (5th Cir. 1986).  In making its determination, the court looks to the content, form, and context of the speech, as revealed by the whole record.  *Connick*, 461 U.S. at 147-48.  The determination thus turns on a fact specific analysis.  *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 221 (5th Cir. 1999).

Communication rises to the level of public concern if a person speaks primarily as a citizen rather than as an employee.  *Dorsett v. Board of Trs. for State Colls.*, 940 F.2d 121, 124 (5th Cir. 1991).  Stated another way, speech is not a matter of public concern when a public employee speaks "as an employee upon matters only of personal interest."  *Connick*, 461 U.S. at 147.  Accordingly, speech by an employee pertaining to internal personnel disputes and working conditions ordinarily will not involve public concern.  *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001).

Speech that "discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials" is a matter of public concern, *Id.* (quoting *Thompson v. City of Starkville*, 901 F.2d 456, 463 (5th Cir. 1990)), as well as speech that discloses misbehavior by public officials. *Brawner*, 855 F.2d at 191-92.  Likewise, whistleblowing, and also expressions relating to possible financial improprieties committed by a fellow public servant, is a matter of public concern.  *Brown v. Texas A&M Univ.*, 804 F.2d 327, 337 (5th Cir. 1986).  In these scenarios, and others, the speaker may be said to "seek to bring to light" an actual or potential wrongdoing or breach of trust.  *See Connick*, 461 U.S. at 148.  Speech that accuses an employer of favoritism, however, is considered

a personal grievance of the employee and not a matter of public policy.  *Moore v. Mississippi Valley State Univ.*, 871 F.2d 545, 551 (5th Cir. 1989).

Courts have used two tests, sometimes conjunctively, to determine whether speech relates to a matter of public concern.  The first is the content-form-context test.  To determine whether an employee's speech addresses a matter of public concern, the court looks to the content, form, and context of the speech, as revealed by the whole record.  *Connick*, 461 U.S. at 147-48.  The second test, the citizen-employee test, also derives from language in *Connick*.  The court is to determine whether, when making the speech, the employee spoke primarily in his role as a citizen or primarily in his role as an employee.  *Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 366 (5th Cir. 2000).  The focus is on "the hat worn by the employee when speaking," meaning the extent to which the employee spoke as a citizen or an employee, rather than upon the inherent interest or importance of the matters discussed by the employee.  *Gillum v. City of Kerrville*, 3 F.3d 117, 121 (5th Cir. 1993).  If the court determines that the employee spoke "not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest," it must refrain from reviewing "the wisdom of a personnel decision taken by a public agency."  *Connick*, 461 U.S. at 147.

When an employee speaks in his capacity as an employee and addresses personal matters, rather than in his capacity as a citizen on a matter of public interest, then clearly, no constitutional protection attaches.  *Salge*, 411 F.3d at 186; *Benningfield v. City of Houston*, 157 F.3d 369, 375 (5th Cir. 1998).  Where the employee speaks from "multiple motives," however, a "mixed speech" situation arises.  *Kennedy*, 224 F.3d at 367; *see Teague v. City of Flower Mound*, 179 F.3d 377, 382 (5th Cir. 1999).  A mixed speech situation arises when speech concerning a person's employment

also involves a matter of public concern. *Teague*, 179 F.3d at 381. When speech merely touches

on an element of personal concern in the broader context of a matter of public concern, a court may

conclude that the employee's speech as a whole addresses a matter of public concern. *Salge*, 411

F.3d at 186 (citing *Kennedy*, 224 F.3d at 365).[1]

Courts use the content-form-context test in mixed speech situations to determine whether the

speech addresses a public or private concern. *Kennedy*, 224 F.3d at 366 (citing *Teague*, 179 F.3d

at 382). In *Salge*, the court applied three principles that were identified in *Kennedy* regarding the

content-form-context test in order to determine the nature of an employee's speech in mixed speech

situations. The first principle focuses on content, and it proposes "if releasing the speech to the

public would inform the populace of more than the fact of an employee's employment grievance,

the content of the speech may be public in nature." *Salge*, 411 F.3d at 186 (quoting *Kennedy*, 224

F.3d at 372). The second principle, addressing context, states that speech on a matter of public

concern "need not be made to the public," although "it may relate to a matter of public concern if

it is made against the backdrop of public debate." *Id.* (quoting *Kennedy*, 224 F.3d at 372). The third

principle, presumably addressing form, states that speech "cannot be made in furtherance of a

personal employer-employee dispute if it is to relate to the public concern." *Kennedy*, 224 F.3d at

372.

### 3.  Discussion

Having reviewed the record, the applicable law, and the evidence, and upon viewing all

inferences drawn from the factual record in the light most favorable to Williams as the nonmoving

---

[1]The citizen-employee test is not used in mixed speech situations, as its use often yields "indeterminable results." This is because, in a mixed speech situation, the presence of some personal concern in the speech does not necessarily preclude a finding that the speech as a whole raises an issue of public concern. *See Kennedy*, 224 F.3d at 366.

party, the court concludes that Williams's First Amendment retaliation claim based upon his removal as Athletic Director does not involve a matter of public concern.  Williams argues that the memorandum reveals concerns that he communicated to Wright not in his capacity as Athletic Director but as a citizen.  The court disagrees.  It has meticulously analyzed the memorandum and concludes that Williams did not speak as a citizen on a matter of public concern; he instead spoke only as an employee on a matter of a personal or private interest.

The memorandum presents a scenario whereby a public employee's speech may conceivably contain a subject matter that addresses more than personal or private speech, but the language used by the employee when conveying the speech failed to identify, or even to characterize, the particular subject matter.  The Fifth Circuit has addressed this scenario.  *See Dodds v. Childers*, 933 F.2d 271, 274 (5th Cir. 1991); *see also Moore*, 871 F.2d at 551.  Complaints containing a subject matter that could possibly rise above the purely personal level, but which are expressed by the employee only as issues of employer *favoritism*, are to be considered personal grievances rather than issues of public concern.  *Dodds*, 933 F.2d at 274.  Moreover, grievances alleging that a specific employee has benefited from favoritism which also affects how rules are enforced against that employee do not address a matter of public concern.  *See Moore*, 871 F.2d at 551.

In *Moore*, the Fifth Circuit affirmed the district court's determination that written grievances prepared by four former daycare center employees failed to show public concern, but it did so only after identifying two grievances that it considered to "stand out as perhaps rising above the personal level" and explaining why such grievances failed to attain public concern status.  *Id.*[2]  The court

---

[2]The first grievance was a complaint that the daycare center permitted a daycare co-employee to carry a gun while working; the second was a complaint that the center permitted the same co-employee to inflict corporal punishment on the children.  *See Moore*, 871 F.2d at 551.

**Memorandum Opinion and Order  - Page 13**

reasoned that the grievances, as written, failed to rise above the "purely personal level" because they complained merely that the center showed "favoritism" to the co-employee "by permitting" her to carry a gun and paddle.  The grievances did not demonstrate, or even suggest, that the activities the center was "permitting" involved "a matter of public concern and ought to be stopped."  *See id*. Therefore, the former employees did nothing more than complain of  "mere favoritism," which is "a personal grievance of the employees and not a matter of public policy."  *See id*. (internal citations omitted).

The speech Williams alleged is akin to the complaints asserted by the *Moore* plaintiffs. Williams, in the memorandum, communicates to his supervisor about his own attempt to operate the athletic department based on "standard operating procedures" and complains that such procedures are not being followed at Pinkston.  His statement, "I have found that there is a network of friends and house rules, which govern practices here [at Pinkston] . . . [A]s a result, Coach Calahan was permitted to deposit an additional $200.00 into the girls account," is nothing but a complaint asserting that the operating procedures at Pinkston are not "standard" because they embrace favoritism.  By suggesting that one particular employee, Coach Calahan, benefited from favoritism because of the laxity in which Pinkston enforced standard operating procedures, Williams's speech falls within the category of a personal grievance. *See Dodds*, 933 F.2d at 274; *Moore*, 871 F.2d at 551.

When Williams wrote the memorandum, he did not indicate that the effect of favoritism resulted in something other than, and in addition to, an internal personnel problem.  The language, as written, does not disclose any evidence of corruption, impropriety, malfeasance, or misbehavior, *see Branton*, 272 F.3d at 739, *and Brawner*, 855 F.2d at 191-92, nor does it whistleblow or express

that Calahan, Wright, or any other Pinkston employee committed possible financial improprieties. *See Brown*, 804 F.2d at 337; *see also Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1051 (5th Cir. 1996) (holding that former coach failed to address a matter of public concern because "there is no evidence" that he was "a whistle blower or attempted to report any wrongdoing to the public or to higher authorities"). The memorandum simply states that, as a result of favoritism, Coach Calahan was permitted to deposit an additional $200 into the account of the girls' basketball team. Had Williams included speech proposing or warning that Wright or the Pinkston Athletic Department violated the law or public policy by permitting Calahan to deposit the $200, the court's decision might be different. *See Dodds*, 933 F.2d at 274; *see also Moore*, 871 F.2d at 551. Moreover, despite the opportunity to submit an affidavit or declaration explaining in detail and with specificity the nature and the intent of his complaint, Williams has failed to do so.

Williams, in response to DISD's motion for summary judgment, has failed to produce competent summary judgment evidence to support his assertion that the speech in the memorandum "expresses concerns regarding Wright's handling of athletic funds" at Pinkston. Pl.'s Original Compl. at 1. This is because he has not provided any evidence explaining to the court what he meant by the words he wrote. Specifically, he has presented nothing, besides the memorandum itself, suggesting that the court should interpret his words as identifying a misallocation of funds harming the public instead of words addressing mere employer favoritism. *See Dodds*, 933 F.2d at 274. Williams has not even submitted an affidavit explaining the meaning he intended to convey by the words that he, and no one else, wrote.[3] Instead, Williams relies upon his mere assertion that

---

[3]The court would likely not consider such evidence even if it were presented, as such evidence would probably be regarded as "retrospective embellishment," and retrospective embellishment cannot transform personal grievances into matters of public concern. *See Dodds*, 933 F.2d at 274.

his speech expresses concerns about Wright's handling of athletic funds at Pinkston.  The court

determines that Williams said nothing in the memorandum beyond that which would be expected

of a public employee in his employment position.  Consequently, the court cannot find that Williams

made the speech contained in the memorandum to "seek to bring to light" an actual or potential

wrongdoing.  *See Connick*, 461 U.S. at 148.

In support of his argument, Williams relies on the following passage from *Pickering v. Board

of Educ. of Twp. High Sch. Dist.*, 391 U.S. 563 (1968):

> Teachers are, as a class, the members of a community most
> likely to have informed and definite opinions as to how funds allotted
> to the operations of the schools should be spent.  Accordingly, it is
> essential that they be able to speak out freely on such questions
> without fear of retaliatory dismissal.

*Pickering*, 391 U.S. at 572.  The court does not quarrel with this general proposition of law.  Like

any public employee, however, a public teacher must speak on a matter of public concern for his or

her speech to warrant protection.[4]  Therefore, a "teacher's exercise of his right to speak *on issues

of public importance* may not furnish the basis for his dismissal from public employment."

*Pickering*, 391 U.S. at 574 (emphasis added).  Not every instance of speech made by a public teacher

addresses a matter of public concern.  *See Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 564

(5th Cir. 2003); *Bradshaw v. Pittsburg Indep. Sch. Dist.*, 207 F.3d 814, 817 (5th Cir. 2000); *Wallace*,

80 F.3d at 1051; *Dodds*, 933 F.2d at 275; *Kirkland v. Northside Indep. Sch. Dist.*, 890 F.2d 794, 800

(5th Cir. 1989).

---

[4]"To presume that all matters which transpire within a government office are of public concern would mean
that virtually every remark . . . would plant the seed of a constitutional case . . . . [T]he First Amendment does not require
a public office to be run as a roundtable for employee complaints over internal office affairs."  *Connick*, 461 U.S. at 149.

In response to DISD's summary judgment motion, Williams also argues that he made oral communications to Wright expressing his concerns about the expenditure of public school funds. Williams has not presented any summary judgment evidence regarding these alleged oral communications, and the court is therefore simply unable to assess whether such communications address a matter of public concern. Because Williams has failed to produce evidence creating a genuine issue of material fact that his speech addressed a matter of public concern, an element which is essential to his case and upon which he carries the burden of proof, his First Amendment retaliation claim based upon his removal as Athletic Director fails. Accordingly, DISD is entitled to a judgment as a matter of law.

### 4.  Addressing the "Mixed Speech" Situation

Having reviewed the record, the applicable law, and the evidence, the court is convinced that Williams's First Amendment retaliation claim based upon his removal as Athletic Director is not a mixed speech situation. Even if the court were to assume that Williams's claim presented a mixed speech situation, his claim would still not address a matter of public concern because it would fail the content-form-context test and the three concomitant principles identified in *Kennedy*.

### a.  Content

The content of Williams's memorandum is a purely private or personal communication that does not address a matter of public concern. Williams, in an internal administrative memorandum, complained that the operating procedures at Pinkston are not "standard operating procedures" because they embrace favoritism. Such favoritism is clearly an internal personnel problem. Applying the first principle in *Kennedy*, "releasing" Williams's memorandum "to the public would

inform the populace of" nothing more than Williams's "employment grievance."  See *Salge*, 411 F.3d at 187 (quoting *Kennedy*, 224 F.3d at 372).

Having examined the totality of Williams's speech, the court concludes that its release to the public would solely convey Williams's complaints of favoritism at Pinkston, particularly, that he was unhappy with current governing practices.  *Compare Connick*, 461 U.S. at 148 (holding no public concern where "the questionnaire, if released to the public, would convey . . . that a single employee is upset with the status quo"), *with Thompson*, 901 F.2d at 463 (finding public concern where an affidavit,  "[i]f released to the public . . .  would expose possible corruption in the police force of the City").  The court views the content of Williams's speech as aligned with the plaintiff's in *Connick* rather than the plaintiff's in *Thompson*.  Therefore, the court concludes that the content of Williams's speech does not support his contention that he spoke out on a matter of public concern.

### b.  Context

Williams is not barred from asserting his claim solely because the speech he claims was constitutionally protected appears in a memorandum that was conveyed privately and never communicated or released to the general public.  *See Givhan v. W. Line Consol. Sch. Dist.,* 439 U.S. 410, 415-16 (1979).  "Publicization of the speech at issue," however, is "another factor to be weighed" in the context analysis. *Thompson*, 901 F.2d at 466.  The second *Kennedy* principle instructs that speech on a matter of public concern "need not be made to the public," although "it may relate to a matter of public concern if it is made against the backdrop of public debate."  *Salge*, 411 F.3d at 187 (quoting *Kennedy*, 224 F.3d at 372).  A topic is not a matter of public debate or even interest to the community at large merely because the topic is a matter of inner-agency debate.

*Gomez v. Texas Dep't of Mental Health & Mental Retardation*, 794 F.2d 1018, 1021-22 (5th Cir. 1986).  An additional factor the court considers when conducting a content analysis is the audience before whom the employee speaks.  *Salge*, 411 F.3d at 187.  The court also considers whether the employee speaks in response to an invitation.  *Id.*

The court concludes that the context of Williams's speech was private in nature. The memorandum itself shows that Williams wrote it to speak before a one-member audience: a co-employee supervisor.  *See Salge*, 411 F.3d at 187.  Williams addressed the memorandum to "Dr. J. Leonard Wright, Principal" and "Cc'd" the document only to the "File."  Additionally, although evidence showing Williams presented the memorandum internally does not, standing alone, cast his speech as private, it does "most certainly suggest that the speech was private in context, rather than public."  *Teague*, 179 F.3d at 383.  Moreover, Williams has presented no competent summary judgement evidence showing that the memorandum was written against the backdrop of public debate regarding the governing practices for the allocation of athletic funds at Pinkston.  Similarly, he has failed to produce evidence showing that he wrote the memorandum in response to an invitation.  Therefore, the court lacks evidence enabling it to view the memorandum as "a continuing commentary that had originated in [a] public forum."  *See Tompkins v. Vickers*, 26 F.3d 603, 607 (5th Cir. 1994) (quoting *Brawner*, 855 F.2d at 192).

### c.  Form

The third principle identified in *Kennedy* presumably addresses form and states that speech "cannot be made in furtherance of a personal employer-employee dispute if it is to relate to the public concern."  *Kennedy*, 224 F.3d at 372.  Typically, an employee speaks in furtherance of a personal employer-employee dispute "when he discusses personnel matters directly impacting his

job or criticizes other employees or supervisors' job performance." *Salge*, 411 F.3d at 188 (citing *Kirkland*, 890 F.2d at 798 n.10).  Stated another way, speech achieves protected status only "if the words or conduct are conveyed by the teacher in his *role as a citizen* and not in his *role as an employee* of the school district."  *Kirkland*, 890 F.2d at 799 (emphasis in original).  The court can look at the form of the document itself in making this determination.  *See Bradshaw*, 207 F.3d at 817.

The court concludes that Williams's speech is undeniably private in form.  The form of Williams's speech is strong evidence that he spoke in his capacity as a DISD employee and not as a citizen.  The memorandum is on Pinkston letterhead, and the words "VIKING ATHLETICS" appear in large font capital letters at the top.  *See id*.  Also, Williams sent the memorandum and signed it in his capacity as Athletic Director.  The memorandum's "From:" line denotes "Dr. Gregory Williams, Athletic Director," and Williams signed the document "Gregory Williams, J.D., Athletic Director."  These facts "heavily favor" a conclusion that Williams's speech "did not constitute matters of public concern."  *See id*.

The words used in the memorandum also indicate that Williams spoke in his role as Athletic Director.  By beginning the first full paragraph of the memorandum with, "[a]s an experienced coach with Dallas Independent School District . . . ," Williams set the tone for an employment-related document.  *See Teague*, 179 F.3d at 383.  The memorandum then goes on to discuss the operating procedures governing practices in the Pinkston Athletic Department.  Such matters necessarily relate to his duties and responsibilities as Athletic Director.  *See Salge*, 411 F.3d at 188.

Having conducted the content-form-context test and the three concomitant principles identified in *Kennedy*, even if the court were to assume that Williams's claim presented a mixed speech situation, his claim nevertheless fails to address a matter of public concern.

### 5.  Conclusion

Williams's speech does not address a matter of public concern.  Williams has therefore failed to create a genuine issue of material fact on the public concern element, an element which is essential to his case and upon which he carries the burden of proof.  As Williams's speech does not address a matter of public concern, the court need not proceed farther, and his First Amendment retaliation claim fails.  Therefore, the court will not address whether Williams suffered an adverse employment action, whether Williams's speech outweighed the government's interest in promoting efficiency, or whether Williams's speech motivated an adverse employment action.  Likewise, the court will not consider DISD's affirmative defense.

## IV.  __Defendant's Objections to Plaintiff's Summary Judgment Evidence__

DISD has filed various objections to Plaintiff's summary judgment evidence.  *See* Def.'s Mot. for Summ. J. at 7-9; *see* Def.'s Reply at 2.  The court previously set forth the evidentiary standard upon which it relied in determining Defendant's Motion for Summary Judgment.  *See supra* at 5-7.  The court did not consider any evidence that did not meet this standard.  In other words, evidence that did not fall within this standard was not considered and played no part in this decision.  Moreover, the court did not rely on any evidence that is precluded by the rules of evidence or other applicable law.

As to the Recommendation With Proposed Findings of Fact and Conclusions of Law by the Independent Hearing Examiner, which was later reversed by a decision of the DISD Board, the court

finds neither Plaintiff's nor Defendant's arguments persuasive.  As the court is required to rule on dispositive motions, it must set forth undisputed facts, apply the appropriate summary judgment standard, and render a decision based upon applicable law.  That is what the court has done notwithstanding the arguments advanced by both parties concerning the effect of the applicability of the Hearing Examiner's findings and the DISD Board's subsequent action.  Therefore, the objections and arguments of the parties in this regard are of no moment, and the court has decided the motion based on applicable federal law.  Accordingly, the court overrules Defendant's evidentiary objections as moot.

## V.      Defendant's Motion to Dismiss

DISD filed a motion to dismiss on September 6, 2005.  It contends that the motion should be granted because:  (1) Williams has reduced his claim by affirmatively denying that he pleaded retaliation claims based on any other employment action taken against him; (2) Williams pleaded facts about such other employment actions in his Original Complaint; (3) DISD has already moved for summary judgment as to any retaliation claims based on these employment actions; and (4) the applicable two-year statute of limitations has not run as to any § 1983 claim based on such alleged employment actions.

The court has already held that all of Williams's claims, except for that based on his oral and written communications and subsequent removal as Athletic Director, should be dismissed with prejudice.  *See supra*, at 5.  Defendants are asking for the same relief that the court has stated it would grant.  Accordingly, the court grants Defendant's motion to dismiss all First Amendment claims arising from Williams's employment with DISD during the period from December 1, 2003

through May 25, 2004, except his claim based on his oral and written communications and subsequent removal as Pinkston Athletic Director.[5]

DISD also has a motion to sever.  This motion to sever is moot in light of the rulings made herein by the court.  Accordingly, DISD's motion to sever should be denied as moot.  Likewise, in light of rulings made by the court, DISD's Alternative Motion for Ruling on the Merits of Defendant's Summary Judgment Motion as to First Amendment Retaliation Claims Based on All Employment Decisions Mentioned in the Plaintiff's Original Complaint will be denied as moot.

## VI.   Conclusion

For all the reasons stated herein, no genuine issues of material fact exist with respect to Williams's First Amendment retaliation claim based on his oral and written communications and subsequent removal as Athletic Director.  Accordingly, the court **grants** Summary Judgment with respect to this claim; **grants** Defendant's Motion to Dismiss with Prejudice All Claims Asserted Against Defendant Under 42 U.S.C. § 1983 and First Amendment Except Claim Based Upon Plaintiff's Removal as Athletic Director; **denies as moot** Defendant's Motion to Sever; **denies as moot** Defendant's Alternative Motion for Ruling on the Merits of Defendant's Summary Judgment Motion as to First Amendment Retaliation Claims Based on All Employment Decisions Mentioned in the Plaintiff's Original Complaint; **dismisses with prejudice** all claims voluntarily withdrawn and dismissed as previously stated by the court; and **overrules as moot** DISD's objections to Williams's

---

[5]Although the time for Williams to respond to DISD's motion to dismiss under local rules has not expired, Williams will not be legally prejudiced in light of his voluntary decision to withdraw his previously stated claims.

summary judgment evidence.  In light of these rulings, this action is **dismissed with prejudice**.

Judgment will be issued by separate document as required by Fed. R. Civ. P. 58.

      **It is so ordered** this 21st day of September, 2005.


                                     Sam A. Lindsay
                                     United States District Judge